RENDERED: NOVEMBER 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1225-WC

THE BANNISTER CO., LLC                       APPELLANT


                 PETITION FOR REVIEW OF A DECISION
v.           OF THE WORKERS' COMPENSATION BOARD
                   ACTION NO. WC-19-95494


WILLIAM HUMBERTO HUERTA;
HONORABLE TONYA MICHELLE
CLEMONS, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD                     APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, MAZE, AND McNEILL, JUDGES.

McNEILL, JUDGE: The Bannister Co., LLC ("Bannister") petitions this Court to

review the opinion of the Workers' Compensation Board ("the Board") reversing

and remanding the Administrative Law Judge's denial of a 5% impairment rating

to William Humberto Huerta ("Huerta") for tinnitus[1] under the Kentucky Workers' Compensation Act ("the Act"). For the following reasons, we affirm.

On January 29, 2019, Huerta was injured when he fell from a ladder while working for Bannister. Huerta filed a claim for workers' compensation alleging injuries to his head, including his facial and orbital bones, temporomandibular joint, and ear (tinnitus).[2] In support of his tinnitus claim, Huerta submitted medical records from his evaluation by Dr. Jerry Lin, an ear, nose and throat doctor, and an independent medical examination ("IME") report from Dr. Jules Barefoot. Bannister challenged any award for permanent partial disability ("PPD") based upon tinnitus, specifically contesting that Huerta's tinnitus was caused by the January 29, 2019, injury, as well as whether Dr. Barefoot properly applied the AMA *Guides*.[3]

Following a hearing, the ALJ entered an opinion and award, finding that Huerta "sustained a work-related injury to his ear in the form of tinnitus on January 29, 2019." The ALJ awarded PPD to Huerta based upon the 23% whole

---

[1] Tinnitus is a sensation of noise in the ear, such as ringing or buzzing.

[2] Huerta also alleged injuries to his back and shoulder, however those injuries are not relevant to this appeal. It was not disputed that Huerta injured his wrist.

[3] American Medical Association *Guides to the Evaluation of Permanent Impairment* (5th ed.) ("AMA *Guides*").

impairment assessed by Dr. Barefoot, which included a 5% impairment for tinnitus. In total, Huerta was awarded $189.51 per week for 425 weeks.

Bannister filed a petition for reconsideration pursuant to KRS[4] 342.281, arguing that the ALJ's award of PPD benefits inclusive of a 5% impairment for tinnitus was patent error. Specifically, it argued that pursuant to KRS 342.7305(2), benefits for hearing loss were not payable because Huerta's whole person impairment rating for tinnitus was less than 8%. It further argued that based upon the plain language of the statute, impairment for tinnitus cannot be considered when determining whole person impairment. Huerta countered that KRS 342.7305 did not apply because he did not file a claim for occupational hearing loss. On June 14, 2021, the ALJ entered an order correcting its original award to exclude the 5% impairment for tinnitus.

Huerta appealed to the Board, again arguing that KRS 342.7305 did not apply to his claim because his claim was not a claim for occupational hearing loss. Huerta noted that he filed a Form 101 for physical injuries he sustained due to the fall, not a Form 103 for hearing loss. The Board agreed with Huerta, finding that Huerta's claim was not a claim for occupational hearing loss. It further held that as a matter of law, KRS 342.7305 was only applicable to occupational hearing loss claims. The Board considered the definition of tinnitus in the AMA *Guides*

---

[4] Kentucky Revised Statutes.

and concluded that tinnitus was not a form of hearing loss. Because substantial evidence supported the ALJ's finding that Huerta's tinnitus was caused by physical trauma, not hearing loss, the exclusion in KRS 342.7305 did not apply. The Board reversed the opinion of the ALJ and remanded for the entry of an amended award, reinstating the impairment rating for Huerta's tinnitus. This appeal followed.

"The well-established standard of review for the appellate courts of a workers' compensation decision is to correct the Workers' Compensation Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Tryon Trucking, Inc. v. Medlin*, 586 S.W.3d 233, 237-38 (Ky. 2019) (internal quotation marks and citations omitted).

Bannister argues on appeal that the Board erred when it determined that KRS 342.7305(2) does not apply to Huerta's tinnitus claim. Bannister contends that while Huerta may not have asserted a hearing loss claim specifically, his claim to benefits was based upon hearing loss. In assessing a 5% impairment rating for tinnitus, Dr. Barefoot relied upon Section 11.2a of the AMA *Guides*, entitled, "Criteria for Rating Impairment due to Hearing Loss." That section provides in relevant part:

> Criteria for evaluating hearing impairment are established through hearing threshold testing, which serves as the most reproducible of the measures of hearing. Therefore, estimate an impairment percentage

based on the severity of the hearing loss, which accounts for changes in the ability to perform activities of daily living. *Tinnitus in the presence of unilateral or bilateral hearing impairment may impair speech discrimination. Therefore, add up to 5% for tinnitus in the presence of measurable hearing loss* if the tinnitus impacts the ability to perform activities of daily living.

(Emphasis added.)

Thus, according to the AMA *Guides*, a 5% impairment rating for tinnitus should be assessed when coupled with measurable hearing loss. Because Dr. Barefoot relied upon this section in assessing the 5% rating for Huerta's tinnitus, Bannister argues that KRS 342.7305 should apply. However, Bannister never made this specific argument before either the ALJ or the Board. Therefore, we consider it not preserved for review. *Fischer v. Fischer*, 348 S.W.3d 582, 588 (Ky. 2011), *abrogated on other grounds by Nami Resources Co., L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323 (Ky. 2018) ("[S]pecific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal."). Before the Board, Bannister simply argued that no impairment percentage for tinnitus can be considered when determining whole person impairment, citing KRS 342.7305(2).

We agree with the Board that KRS 342.7305 does not apply to Huerta's claim. KRS 342.7305 provides in relevant part:

(1) In all claims for occupational hearing loss caused by either a single incident of trauma or by repetitive

exposure to hazardous noise over an extended period of employment, the extent of binaural hearing impairment shall be determined under the "Guides to the Evaluation of Permanent Impairment."

(2) Income benefits payable for occupational hearing loss shall be as provided in KRS 342.730, except income benefits shall not be payable where the binaural hearing impairment converted to impairment of the whole person results in impairment of less than eight percent (8%). No impairment percentage for tinnitus shall be considered in determining impairment to the whole person.

By its plain language, KRS 342.7305 applies only to "claims for occupational hearing loss[.]" But Huerta did not file a claim for occupational hearing loss. Huerta filed a claim for physical injury. Further, Huerta's claim did not proceed as a claim for hearing loss. There was no referral for a medical evaluation as required by KRS 342.7305(3) and 803 KAR[5] 25:010 § 11(1).

Dr. Barefoot diagnosed Huerta with "ongoing tinnitus secondary to a closed head injury/facial fractures due to a workplace fall[.]" The AMA *Guides* define tinnitus as:

A sensation of noise (such as ringing or roaring) in the ear. Tinnitus may be audible or inaudible. Audible tinnitus is usually associated with a muscular tic or vascular bruit. Inaudible tinnitus can be heard only by the person affected and may be associated with an obstruction of the external auditory canal or a disturbance of the auditory nerve and/or the central nervous system.

---

[5] Kentucky Administrative Regulations.

Nowhere in this definition is tinnitus characterized as a type of hearing loss, nor was there any medical testimony or evidence to such effect. While Dr. Loeb opined that Huerta had hearing loss and tinnitus from prior noise exposure, the ALJ accepted Dr. Barefoot's opinion that Huerta's tinnitus was caused by the January 29, 2019, fall. There was no finding that Huerta had occupational hearing loss because of the accident. Because there was no finding of occupational hearing loss or occupational hearing loss claim, the Board correctly concluded that KRS 342.7305's exclusion of impairment percentages for tinnitus does not apply.

As a secondary argument, Bannister contends that Dr. Barefoot's assessment is improper because it is not based upon the AMA *Guides*. Since the AMA *Guides* only allows for a 5% impairment rating for tinnitus in the presence of hearing loss, Dr. Barefoot's assessment of tinnitus in the absence of hearing loss does not comport with the *Guides*. Again, it does not appear this specific argument is preserved for our review. While Bannister listed "[w]hether Dr. Barefoot's assessment of impairment was issued in accordance with the AMA Guides, 5th Edition" as a contested issue at the Benefit Review Conference, its only argument, according to the briefs, was that the ALJ should favor the opinion of Dr. Lin, an ear, nose, and throat specialist, who found Huerta's tinnitus unrelated to the work accident, over Dr. Barefoot's opinion.

However, even assuming the argument is sufficiently preserved, we find no error. Dr. Barefoot specifically cited Section 11.2a of the AMA *Guides* in assessing a 5% impairment rating for tinnitus. While Bannister reads this section as allowing for a 5% impairment rating for tinnitus *only* in the presence of hearing loss, "the proper interpretation of the *Guides* and the proper assessment of an impairment rating are medical questions." *Kentucky River Enterprises, Inc. v. Elkins*, 107 S.W.3d 206, 210 (Ky. 2003). Here, there was no expert testimony that Dr. Barefoot's assessment was contrary to the *Guides*.

Further, our Supreme Court held in *Plumley v. Kroger, Inc.*, 557 S.W.3d 905 (Ky. 2018), that strict adherence to the *Guides* is not required, only general conformity with them. *Id.* at 912. Here, Dr. Barefoot clearly stated that he assessed the 5% impairment rating for tinnitus pursuant to Section 11.2a of the *Guides*. His assessment was, therefore, grounded in the *Guides*, which is all that is required. While Dr. Loeb offered a different assessment of Huerta's impairment, the ALJ found Dr. Barefoot's assessment more credible. "The ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming*, 520 S.W.3d 382, 386 (Ky. 2017) (citation omitted).

Based upon the foregoing, the opinion of the Workers' Compensation Board is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Lyn Douglas Powers
Louisville, Kentucky

BRIEF FOR APPELLEE WILLIAM
HUMBERTO HUERTA:

Stephanie N. Wolfinbarger
Louisville, Kentucky